IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

Rohit B. SURTI and
Jayshri R. SURTI,

        Plaintiffs,

v.

Kevin CRAIG, *et al.*,

        Defendants.

Civil No. 15-3949 (RBK/AMD)

**OPINION**

**KUGLER**, United States District Judge:

    Plaintiffs Rohit B. Surti and Jayshri R. Surti bring this suit against Officers Kevin Craig and Laura Winkel of the City of Absecon Police Department (the "APD"), the APD itself, and the City of Absecon (the "City") (collectively, "Defendants"). Mr. Surti, a motel manager, states that he called the police to deal with a resident who had pushed him, but when the police arrived, they treated him as the assailant. Exasperated, Mr. Surti said he didn't think the police were doing their jobs, whereupon he was sprayed with oleoresin capsicum spray and then thrown to the ground with force sufficient to shatter his shoulder in four parts. After subsequently pleading guilty to disorderly conduct and getting surgery for his shoulder, he filed this 28 U.S.C. § 1983 action.

    Today the Court rules on Defendants' Motion for Summary Judgment. (Doc. No. 39.) Taking the facts in the light most favorable to the Surtis, we find that Defendant Officers' use of force was not objectively reasonable under the circumstances, that the Officers are not entitled to qualified immunity because the law in this area is "clearly established" under Third Circuit precedent, and that Plaintiffs have failed to demonstrate that their injuries arose from a cognizable

1

claim of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). In short, Defendants' motion is **GRANTED** as to the claims of municipal liability against the City of Absecon, but **DENIED** as to the other claims and qualified immunity.

I. THE FACTS

We begin by noting that Defendants have not complied with Local Civil Rule 56.1, which they are advised to review. However, the Court will rule on the motion in the interests of judicial economy. We take the facts in the light most favorable to Plaintiffs.

On the evening of June 18, 2013, at around 8:30 p.m., Officer Laura Winkel of the Absecon Police Department was on patrol and noticed a green shopping cart on the premises of the "Budget Inn 4 U" (the "Budget Inn"). Officer Winkel had previously warned Mr. Surti about having stolen shopping carts on the premises; this time, Officer Winkel prepared a written complaint and summons, and served it on Mr. Surti. (Def. SMF at ¶ 1.) Because the shopping carts belonged to the Dollar Store, Mr. Surti was charged under N.J. Stat. Ann. § 2C:20-7 for receiving stolen property. He was advised of a court date. (*Id.*; Def. Br. Ex. A.)

Around an hour after Officer Winkel served the shopping cart complaint on Mr. Surti, someone called the police from the Budget Inn—Mr. Surti says it was him—to report an assault on the premises. (Def. SMF at ¶ 2; Opp'n at 3.) The person then hung up. (Def. SMF at ¶ 2.) Officer Winkel and Officer Kevin Craig and were dispatched to the Budget Inn. (*Id.*)

It seems there had been an altercation between Sydney Atkins, a six-week resident at the Budget Inn, and Mr. Surti. What happened is disputed. As later stated to Officer Winkel by Atkins, Mr. Surti had forced open his motel room door, shouted expletives, and pushed Atkins, who almost fell onto an infant sitting in a walker. (Def. SMF at ¶ 2.) Atkins regained his balance, though, and

2

pushed Mr. Surti back, telling him to get out of the motel room. (*See* Officer Winkel Police Report, Def. Br. Ex. B.)

Mr. Surti's version of events is quite different. In his deposition, Mr. Surti recounted that, after getting the shopping cart complaint, he went upstairs to ask about a late rent payment, and found about 5 people in the room. (Surti Dep. 28:1-30-25.) Mr. Surti states he approached them calmly, but it appears that this request angered Atkins, who pushed Mr. Surti. (*Id.*) Mr. Surti denies that he ever pushed Atkins, and stated that he ran away instead. (Opp'n Br. at 2; Surti Dep. at 28:1-7.) However, this is inconsistent with a statement Mr. Surti made to Officer Craig that was recorded in a subsequent police report. That report states that Mr. Surti spoke with Atkins about the stolen shopping cart (not his rent), that there were about 10 people in the room (not 5), and that Mr. Surti had asked Atkins what he was doing there with so many people. (*See* Def. Br. Ex. C.)

In due course the police arrived in response to the phone call. The record is unclear, but it appears Officers Craig and Winkel first spoke to Atkins before speaking to Mr. Surti. When they finished speaking to Atkins, whose recollections are recorded in police reports of this evening, they turned to Mr. Surti.

Mr. Surti told Officer Craig that Atkins had pushed him. (Opp'n at 3; Def. Reply at 1.) He told Officer Craig to remove Atkins and that he was "not doing [his] job." (*Id.*) When advised that he could file a complaint against Atkins, Mr. Surti also loudly stated that "[t]he complaint system is stupid and it does nothing." (Craig. Dep. at 82:1-6; 91:6-92:3; Opp'n at 3.) At this point, Mr. Surti claims Officer Craig became "enraged" and threatened to arrest him. (Opp'n at 4.) Officer Winkel's subsequent police report corroborates much of this, including that she believed Mr. Surti refused to speak to her. (Def. Br. Ex. B.) She also noted that Mr. Surti had started yelling at Atkins from across the parking lot. (*Id.*) Mr. Surti was told to lower his voice by Officers Craig and

3

Winkel; he did not, and his yelling drew more of the Budget Inn's residents out of their rooms to watch the commotion. (*Id.*) Mr. Surti was again told to lower his voice, but continued yelling. (*Id.*) It appears Mr. Surti was warned if he did not calm down he could be arrested, though the precise phrasing is disputed, and Surti denies that he was told he was "under arrest." (Opp'n SMF at ¶ 5.) Officers Craig and Winkel both advised Mr. Surti that he was under arrest for disorderly conduct, as stated in their police reports.

Under Mr. Surti's version of events, it appears that at some point during the commotion and after being warned of the possibility of arrest, Officer Craig suddenly used pepper spray on him "without warning." (Compl. at ¶ 13; Opp'n SMF at 5.) What happened is a blur, one not clarified much by the disjointed and contradictory positions of the parties—indeed, Defendants call it a "very fluid situation with the positions of the officers and Plaintiff changing continuously." (Def. Reply at 1.) Mr. Surti's recollection appears to be that, while confused and in pain because of the pepper spray, Officers Craig and Winkel came at him from the sides and used an "arm-bar," a takedown technique, to subdue him. (Opp'n SMF at ¶¶ 7-9.) Mr. Surti states that this was improperly done; he maintains that properly using this technique requires the opposite side or arm to be free. (Opp'n SMF at ¶¶ 8-9.). Because his other arm was being held by Officer Craig, that apparently did not happen. (*Id.*) This mistake caused everyone to fall to the ground. (*Id.*)

Mr. Surti claims the combination of his disorientation, the arm-bar takedown, and the accidental fall shattered his shoulder. (Surti Dep. 39:10-40:8; Opp'n SMF at ¶ 10.) He also states that the minimum safe distance for the use of pepper spray is three feet, and that he was sprayed directly in the eyes. (Opp'n at ¶ 13.) The basis for this assertion is unclear, and is refuted by an expert report submitted by Defendants. (Reply Ex. K. at 29-31.) Mr. Surti also asserts that the spray canister caused a cut to his nose, though it is unclear how that could have occurred, and there

4

is conflicting evidence suggesting the cut may have resulted from his fall to the ground. (Opp'n SMF at ¶ 11; Reply SMF at ¶¶ 11-12.)

The Absecon Police Department officers have gone to the Budget Inn many times, and Mr. Surti believes they are "generally angry" about having to do so. (Opp'n at 3.) Mr. Surti also notes that Officer Winkel believed that Mr. Surti refused to listen to her because she was a woman:

> **Q:** . . . where were you?
> **A [Winkel]:** We were talking to Mr. Surti directly, or I was trying to talk to Mr. Surti directly, and he kept looking past me to speak to patrolman Craig and he didn't want to speak to me directly.
> **Q:** Didn't want to talk to a woman is what you believed?
> **A:** That's what I assumed, yes.

(Winkel Dep. at 65:24-66:7.)

The parties also dispute whether Mr. Surti was drunk this evening. Officer Craig had stated in his police report that he had detected the odor of an alcoholic beverage in Mr. Surti's breath, but Mr. Surti states he only had one shot of whiskey, which he had previously imbibed at his brother's house. (Surti Dep. at 35:16-36:6.) But although the parties dispute how much alcohol Mr. Surti consumed, Mr. Surti does not contest the fact that Officer Craig could smell alcohol on his breath. (Opp'n at 3.)

Once subdued, Mr. Surti was taken to police headquarters and detained in a cell. He was told he could wash his face in the sink, and Galloway Emergency Medical Services arrived to assist with decontamination of the pepper spray and check Mr. Surti for possible injuries. Mr. Surti complained of shoulder pain and the small cut on the bridge of his nose, and states the pain was severe enough to prevent him from using a water fountain at the police station. (Surti Dep. 40:5-16.)

Mr. Surti went to the hospital the following morning, and the reviewing physician noted a pain level of "10/10" and "a displaced 4-part fracture of the left proximal humerus," i.e., a broken

shoulder. (Def. Br. Ex. L.) The physician's notes also indicate that the injury resulted from an event "in the parking lot of his motel with a customer," which is borne out a number of times in his medical history, and Defendants argue this shows that the injury was caused by a customer, not them. But at least one note indicates "the patient had an altercation with a police officer," and Mr. Surti himself states the injury was caused during his arrest. (Opp'n at 3.) For this injury, Mr. Surti had surgery on his left shoulder and arm on June 21, 2013. No expert medical report for these injuries has been presented to the Court.

Because of the incident, Mr. Surti was charged with harassment, disorderly conduct, and resisting arrest. (Def. SMF at ¶ 7.) At a plea hearing, Mr. Surti admitted that he had been drinking at least some alcohol and that he was involved in an altercation with Atkins. (*Id.* at ¶¶ 8-9.) He also admitted that he had become "loud and boisterous," that the incident "became much more than it should have been," and that things were "pretty crazy" when the police arrived. (*Id.*; *see* Def. Br. Ex. H.) Ultimately, he pleaded guilty to disorderly conduct and the charges for resisting arrest and harassment were dismissed. (*Id.*) A no-contact order between Mr. Surti and Atkins was also entered. (*Id.*)

This lawsuit was filed some time after. Plaintiffs Rohit and Jayshri Surti appear to claim violations of 42 U.S.C. § 1983 (Count One), the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1 *et seq.* (Count Two), the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1 (Count Five), and Ms. Surti seeks damages for loss of consortium (Count Seven). Plaintiffs also present three other indeterminate "counts" in their complaint (Counts Three, Four, and Six), which the Court will not attempt to decipher as the parties have not challenged these in the current motion.

Defendants seek summary judgment on the § 1983 claims of excessive force and *Monell* liability. They also argue that Officers Craig and Winkel are entitled to qualified immunity, as well

as statutory immunity under the New Jersey Tort Claims Act, N.J. Stat. Ann. 59:1-1 *et seq.* Finally, Defendants argue that Mr. Surti cannot show he was proximately harmed by their actions.

## II. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F.

7

App'x 353, 354 (3d Cir. Sept. 17, 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

Defendants move for summary judgment on several bases. First, they argue Mr. Surti cannot prove an excessive force claim. Second, they argue that Mr. Surti cannot prove the City of Absecon can be subject to municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). Third, Defendants argue that they are entitled to qualified immunity. Fourth, Defendants argue they are entitled to immunity under the New Jersey Tort Claims Act, N.J. Stat. Ann. 59:1-1 *et seq.* Finally, they argue Mr. Surti cannot prove the Defendants proximately caused his injury. Because the "the question of whether a plaintiff has adequately alleged a constitutional violation is subsumed within the immunity analysis," *R.K. v. Y.A.L.E. Sch., Inc.*, 621 F. Supp. 2d 188, 196 (D.N.J. 2008), we analyze the excessive force claims and qualified immunity together.

#### A. Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Put differently, "immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

The Third Circuit uses a two-prong inquiry to determine whether a government official is entitled to qualified immunity. *Pollock v. The City of Phila.*, 403 Fed. App'x 664, 669 (3d Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). The first prong requires a court to "decide whether the facts . . . make out a violation of a constitutional right." *Id.* (quoting *Pearson*, 555 U.S. at 232). Under the second prong, a court must "decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* (quoting *Pearson*, 555 U.S. at 232) (internal quotation marks omitted). Courts are permitted to use discretion as to which prong to apply first. *Giles v. Kearney*, 571 F.3d 318, 325 (3d Cir. 2009) (citing *Pearson*, 555 U.S. at 232).

On summary judgment, qualified immunity is a question of law, but disputed issues of material fact will preclude finding qualified immunity. *Id.* at 327 (reversing district court for finding qualified immunity in excessive force case where "such a legal conclusion . . . rests on a factual presumption that is inappropriate on summary judgment"); *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.").

*1. Excessive Force under the Fourth Amendment*

"Use of excessive force by a state official effectuating a search or seizure violates the Fourth Amendment." *Estate of Smith v. Marasco*, 430 F.3d 140, 148 (3d Cir. 2005). When addressing an excessive force claim, the Court must consider whether the officers' use of force was objectively reasonable under the circumstances, regardless of their underlying motive or intentions. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Although reasonableness is often a question for the factfinder, summary judgment in favor of defendants is appropriate "if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use

of force was objectively reasonable under the circumstances." *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (quoting *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999)). An excessive force claim must be evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004); *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011) ("Monday morning quarterbacking is not allowed").

In analyzing an excessive-force claim, courts examine whether the force used was objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). We are to consider, among other things, (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," (3) "whether he is actively resisting arrest or attempting to evade arrest by flight," *id.* at 396, (4) "the possibility that the persons subject to the police action are themselves violent or dangerous," (5) "the duration of the action," (6) "whether the action takes place in the context of effecting an arrest," (7) "the possibility that the suspect may be armed," and (8) "the number of persons with whom the police officers must contend at one time," *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). We note further that "the central issue is the force the officers employed (and whether it was reasonable under the circumstances), not the injury they caused." *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011). This continues to be the law of this Circuit. *See Ickes v. Grassmyer*, 704 Fed. Appx. 190, 192-193, 2017 U.S. App. LEXIS 13701, *5-6 (3d Cir. 2017).

In light of these considerations, we do not find that Officers Craig and Winkel used an objectively reasonable amount of force to arrest Mr. Surti. The severity of the crime at issue here, disorderly conduct, was fairly minor. Officers Craig and Winkel were very familiar with Mr. Surti, having visited the Budget Inn numerous times, including once that very evening. The record does

not indicate that Mr. Surti posed an immediate threat to them, particularly as Mr. Surti denies that he had drunk more than a glass of whiskey. Mr. Surti likewise denies that he was resisting arrest, and the only evidence available to refute that comes from Officers Craig and Winkel and their own police reports, creating an issue of genuinely disputed material fact. Nothing in the facts before the Court indicates Mr. Surti was being violent or dangerous. The record does not indicate that Officers Craig and Winkel worried that Mr. Surti was armed.

While the Court recognizes that Officers Craig and Winkel were effecting an arrest, and the use of force is often necessary to do so, the record before the Court is not established on whether it was necessary here, or, indeed, whether Mr. Surti was notified he was under arrest before the use of force. Finally, while the Court also recognizes that the argument between Officers Craig and Winkel and Mr. Surti drew the attention of the residents of the Budget Inn, nothing has been submitted to the Court to suggest that those residents posed a threat to the police.

We address one more of Defendants' arguments. They claim that any unintended, accidental injuries to Plaintiff do not establish excessive force, citing *Brower v. Cty. of Inyo*, 489 U.S. 593 (1989). *Bowers* dealt with a high-speed car chase in which the plaintiff had been fleeing police until he had a fatal head-on collision with an 18-wheel tractor-trailer serving as a roadblock. *Id.* at 594. In determining whether plaintiff-decedent's untimely demise was a "seizure" for purposes of the Fourth Amendment, the Supreme Court asked whether a seizure could arise by accident, concluding that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." *Id.* at 596. By way of example, the Court noted that "if a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment." *Id.*

Here, the parties do not dispute that Officers Craig and Winkel, whatever else happened on the evening in question, intentionally "seized" Mr. Surti under the Fourth Amendment. *Everyone* may have fallen to the ground by accident after an arm-bar takedown went awry, but *Mr. Surti*'s fall was clearly intended. *Bowers* is thus inapposite, and does not disturb our conclusion that, taking the facts in the light most favorable to Plaintiffs, this was not an objectively reasonable use of force.

### 2. *Clearly Established Right*

Having determined that a reasonable jury could find a constitutional violation based on the alleged facts, we next consider whether Mr. Surti's rights in this specific context were "clearly established." In a certain sense, it is beyond debate that the right in question is clearly established, for the right to be free from excessive force has long been established. *See Graham*, 490 U.S. at 394. However, the Supreme Court has repeatedly cautioned against viewing rights in such general terms for qualified immunity, for it would frustrate the basic principles of qualified immunity, which is "an immunity from suit rather than a mere defense to liability." *Pearson*, 555 U.S. at 237. Thus the Supreme Court has cautioned that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *Pauly*, 137 S.Ct. at 552 (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning" to officers, *United States v. Lanier*, 520 U.S. 259, 271 (1997), but liability for the use of force should only be imposed on an officer if "in the light of pre-existing law the unlawfulness [was] apparent," *Anderson*, 483 U.S. at 640.

A right is "clearly established" when "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 1294, 202 (2001). Officers who make reasonable mistakes as to what the law requires are entitled to qualified immunity, which "operates . . . to protect officers from the sometimes hazy border between excessive force and acceptable force." *Id.* at 206 (internal quotation marks omitted).

In the context of excessive force claims, the Third Circuit instructs district courts to rely on the factors set forth in *Graham* and *Sharrar*, which we have enumerated above, in evaluating whether an officer made a reasonable mistake. *Green v. New Jersey State Police*, 246 F. App'x 158, 162 (3d Cir. 2007); *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006); *Estate of Smith v. Marasco*, 430 F.3d 140, 149-150 (3d Cir. 2005). These factors "are well-recognized," *Couden*, 446 F.3d at 497, and "if an officer applies the *Sharrar* analysis in an unreasonable manner, he is not entitled to qualified immunity. *Marasco*, 430 F.3d at 150. And though there is tension between this approach, which uses the eight-factor *Sharrar* test to determine whether an officer's conduct was "clearly established," and the Supreme Court's disdain for "a high level of generality," this is the law of this Circuit.[1] *See Giles*, 571 F.3d at 327, n.4 ("denying summary judgment on the basis of [a] factual dispute . . . is not an improper 'fusion' of qualified immunity analysis and the merits analysis" of qualified immunity).

Taking Mr. Surti's version of events as true, we did not find that Officers Craig and Winkel applied the *Sharrar* factors in an objectively reasonable manner, and under Third Circuit precedent we therefore conclude that the officers did not make a reasonable mistake about clearly established

---

[1] We observe, however, that it is hard to conceive of a higher level of generality than an eight-factor-or-more test for excessive force.

law. We also note that what happened between the parties is factually unclear and unsettled, which has also prevented a finding of qualified immunity in similar cases. *See Giles*, 571 F.3d at 327 (reversing district court for finding qualified immunity in excessive force case where "such a legal conclusion . . . rests on a factual presumption that is inappropriate on summary judgment"); *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."). *See also Guthrie v. Guthrie*, 216 F. Supp. 3d 590, 596 (W.D. Pa. 2016) ) (denying qualified immunity on excessive force claim in a factually disputed case where, under plaintiff's version of the facts, where officer forcefully restrained plaintiff getting out of bed, causing a broken hip); *Noble v. City of Camden*, 112 F. Supp. 3d 208, 228 (D.N.J. 2015) (same, where the officer beat the restrained, unarmed plaintiff, including after he fell on the ground); *Geist v. Ammary*, 40 F. Supp. 3d 467, 485–86 (E.D. Pa. 2014) (same, because of unresolved factual disputes as to the reasonableness of the officer's use of a taser); *Jackson v. City of Pittsburgh*, 688 F. Supp. 2d 379, 401 (W.D. Pa. 2010) (same, where officers used force against an unarmed plaintiff who did not exert any threats toward the officers); *Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008) (same, where the officer pushed a compliant prisoner to the ground without provocation from her, and knowing the others present posed no threat). We therefore deny summary judgment on the question of qualified immunity—"[t]hese disputes should be resolved by a jury, not the court." *Ammary*, 40 F. Supp. 3d at 485.

### B. *Monell* Liability

Plaintiffs have failed to carry their burden of proof for their *Monell* claim. "A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't*

14

*of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)). To hold a city liable under § 1983, the plaintiff must demonstrate that her rights were violated by a policy or custom of the city and that such policy or custom has been "the moving force" behind the deprivation of her constitutional rights. *See Monell*, 436 U.S. at 694. Municipal policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Id.* at 690. A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691.

Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" that will trigger liability under § 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

Municipal liability under § 1983 requires an underlying constitutional violation, *see Monell*, 436 U.S. at 690–91, and Mr. Surti has identified excessive force as such a violation. But Mr. Surti has not presented an iota of evidence that could sustain a *Monell* claim against the City of Absecon. At most, Mr. Surti argues that Officer Craig admitted that his memory, about training on pepper spraying at the police academy over a decade ago, is cloudy. Specifically, he said he

15

had not received any on-going training recently, though the specific parts of his deposition have not been submitted to the Court. But it is not surprising that Officer Craig cannot recall the particulars of a lesson a decade prior, but even if it were, this falls far short of showing the *City*'s policy or procedure was a "moving force" behind the alleged use of excessive force. We are not aware of any authority that requires a City to be responsible for the memories of its police force without any affirmative obligation to the contrary. We therefore cannot find that the City's policies or customs resulted in Mr. Surti's injuries. Furthermore, Mr. Surti's threadbare allegations that the City failed to train its employees similarly fail to show the "deliberate indifference" threshold that claim requires. We need facts, and precious few were given. Summary judgment is therefore appropriate for the *Monell* claim against the City of Absecon.

### C. Good Faith Immunity under the New Jersey Tort Claims Act

Defendants argue that since they were employees of the City of Absecon, they are entitled to immunity to suit under the New Jersey Tort Claims Act, N.J. Stat. Ann. 59:1-1 *et seq.* At the outset we note that Defendants' request is imprecise, for the City of Absecon is itself a defendant in this action, and we assume Defendants do not intend to refer to the City as an employee of itself. We will therefore interpret Defendants' arguments to solely address Officers Craig and Winkel.

The Tort Claims Act provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J. Stat. Ann. § 59:3-3. As explained by the Supreme Court of New Jersey,

> Good faith immunity under section 3–3 has two alternate components. A public employee either must demonstrate "objective reasonableness" or that he behaved with "subjective good faith." A public employee need prove only one component. Immunity attaches if the employee can show either objective or subjective good faith. We note that both forms of good faith overlap as a matter of fact and law.

16

*Alston v. City of Camden*, 168 N.J. 170, 186 (2001) (citing *Tice v. Cramer*, 133 N.J. 347, 374 (1993); *Bombace v. City of Newark*, 125 N.J. 361, 374 (1991)) (citations and quotations omitted).

Defendants argue there is no genuine issue of material fact that Defendants' conduct was objectively reasonable, but the nature of this dispute prevents the Court from finding against Mr. Surti. We do not find the use of excessive force to be "objectively reasonable," for the same reasons we enunciated before.

We also cannot find, on summary judgment, that Officers Craig and Winkel acted with "subjective good faith." Mr. Surti argues the police were tired of coming to the Budget Inn, and the facts permit an inference that they could have been unduly frustrated for returning to the Budget Inn for the second time that evening. Mr. Surti has also shown that Officer Winkel has said she felt Mr. Surti was not listening to her because she was a woman. We do not know the precise reason for why she felt this way, and the Court does not decide on that matter today, leaving it to the jury. But we do hold that defendants fail to demonstrate subjective good faith for purposes of qualified immunity. We therefore decline to grant summary judgment on the affirmative defense of immunity under the Tort Claims Act.

### D. Proximate Cause

Finally, Defendants take the position that Mr. Surti cannot prove Officers Craig and Winkel proximately caused his shoulder to shatter when, as he alleges, they used a "takedown" maneuver that caused the three of them to fall to the ground, thereby shattering his shoulder. Mr. Surti justifiably believes this happened, and medical records bear it out as well—but Defendants nonetheless assert that he can't prove it because some notes taken by Mr. Surti's doctor are inconsistent with Mr. Surti's own stated experience.

Proximate causation is a vague concept, but not so vague as this. "It is perhaps an understatement to acknowledge that causation 'is an inscrutably vague notion, susceptible to endless philosophical argument, as well as practical manipulation.'" *Scafidi v. Seiler*, 119 N.J. 93, 101, 574 A.2d 398, 402 (1990) (citing Robinson, *Multiple Causation in Tort Law: Reflections on the DES Cases*, 68 Va. L. Rev. 713, 713 (1982)). Defendants' argument that Mr. Surti cannot prove proximate causation comes perilously close to the uncertainties of the undergrad who, discovering his eyes play tricks on him from time to time, concludes nothing is real, all is fantasy, and that when you believe someone has thrown you to the ground, that is illusory, for a note elsewhere says otherwise. Whatever merits this "endless philosophical argument" may have, we cannot decide this factual question on summary judgment. Mr. Surti has stated that his shoulder was shattered by Defendants, not a customer; the parties disagree on this material fact, and that resolution at this stage in the proceedings. Thus, because "[p]roximate cause is a factual issue, to be resolved by the jury after appropriate instruction by the trial court," *Scafidi*, 119 N.J. at 101, we deny summary judgment on the issue of proximate cause.

### IV. CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. An order follows.

Dated: February 16, 2018   /s Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

18